684 A.2d 1077

**COMMONWEALTH of Pennsylvania**

v.

**James A. PEER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1996.

Filed Oct. 28, 1996.

112

Alex E. Echard, Mt. Pleasant, for appellant.

Rita Donovan Hathaway, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

As a result of a domestic altercation that grew into a confused and tangled melee, appellant, James A. Peer, was arrested and charged with recklessly endangering another person (REAP), terroristic threats and simple assault. Following a non-jury trial, appellant was convicted of the REAP charge. He now appeals from the judgment of sentence.

On September 10, 1994, appellant and his wife attended a party hosted by Robert Trask. Sometime around 2:30 a.m., several guests witnessed a dispute between appellant and his wife in which appellant grabbed his wife and threatened to kill her. At least two of the party guests attempted to pry Charlotte Peer away from appellant, to no avail. It was at this time that the witnesses noticed that appellant was holding a gun. At some point, Mr. Trask ran out of his home and saw that appellant had his weapon trained on Charlotte Peer. After appellant refused to surrender the gun, Mr. Trask tackled appellant. In the ensuing struggle, appellant threatened to kill Mr. Trask and dug the barrel of his gun into Mr. Trask's chest. Appellant was eventually subdued and restrained without harm to himself or Mr. Trask.

Appellant presents a number of issues for our review. He argues that: (1) the Commonwealth failed to sustain its burden of proof with respect to the intent requirement of the

REAP charge and that because simple assault is a lesser included offense of REAP, he could not be convicted of only the greater charge, (2) the trial court erred in refusing to grant appellant's motion to dismiss pursuant to Pa.R.Crim.P. 1100, (3) the trial court erred in admitting testimony relative to the altercation between appellant and his wife that was occurring as the victim encountered appellant, (4) the trial court erred in refusing to allow testimony concerning an allegation that the victim and his girlfriend had previously accused a third party of murder in an unrelated incident, (5) appellant was subjected to double jeopardy due to the trial court's failure to dismiss the criminal charges against him after he was fired from his job with the Westmoreland County Children's Bureau as a result of the same incident and that his acquittal of simple assault necessitated a finding of double jeopardy with respect to his conviction for recklessly endangering another person and (6) the trial court erred in applying the deadly weapon enhancement to appellant's sentence.

With respect to appellant's initial claim, that of insufficient evidence to sustain the REAP conviction, our standard of review is well-settled. This Court must view the evidence and all reasonable inferences derived therefrom in the light most favorable to the Commonwealth, as verdict winner, and determine whether sufficient evidence was presented to prove each element of each crime beyond a reasonable doubt. *See, e.g., Commonwealth v. Berkowitz,* 537 Pa. 143, 146–48, 641 A.2d 1161, 1163 (1994); *Commonwealth v. Smolko,* 446 Pa.Super. 156, 162–63, 666 A.2d 672, 675 (1995).

The crime of recklessly endangering another person is committed when a person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "The mens rea required for this crime is a conscious disregard of a known risk of death or great bodily harm to another person." *Commonwealth v. Cottam,* 420 Pa.Super. 311, 344, 616 A.2d 988, 1004 (1992). *See also, Commonwealth v. Sanders,* 339 Pa.Super. 373, 379, 489 A.2d 207, 210 (1985).

■ Contrary to appellant's assertion, this Court believes that ample evidence was adduced at trial to find that appellant ' recklessness was appellant's possession of a weapon at a party at which he consumed alcohol, appellant completely disregards the fact that, in addition to merely possessing the weapon, he brandished the weapon, struggled over control of it and threatened to kill two people. Moreover, appellant would have this Court believe that, because he was trained in firearms safety, there was no risk of injury and therefore no assault. "Defendant's gun was in effect the same as [an] unloaded weapon." (Appellant's brief at 22.) This Court refuses to hold that a loaded weapon in the hands of a person trained in its use is tantamount to an unloaded weapon. Such a conclusion would belie reality. In light of the foregoing, appellant's assertion that his conduct did not deviate from that of a reasonable person is ludicrous.

In addition to the sufficiency argument, appellant claims that, because he was acquitted of the lesser included offense of simple assault, he could not rightfully be convicted of the greater offense of REAP. This argument is fundamentally flawed.

■ Although the Commonwealth argues that simple assault and recklessly endangering another person are distinct offenses, this Court is bound by the controlling precedent of this Commonwealth which holds that simple assault is indeed a lesser included offense of recklessly endangering another person. *See, e.g., Commonwealth v. Berrena,* 421 Pa.Super. 247, 251–53, 617 A.2d 1278, 1280 (1992); *Commonwealth v. Channell,* 335 Pa.Super. 438, 444–45, 484 A.2d 783, 786 (1984); *Commonwealth v. Artis,* 294 Pa.Super. 276, 282–83, 439 A.2d 1199, 1202 (1982). This finding affords appellant a Pyrrhic victory, however, for it does not follow that this prevents a conviction for only the greater offense.

■ The fact that simple assault is a lesser included offense of recklessly endangering another person means that ' the two crimes merge for sentencing purposes and that, if convicted for both crimes, appellant could only have been

sentenced once. *Id.* The merger doctrine has no impact upon the long-standing precedent in this Commonwealth that consistency is not required in criminal verdicts. Provided that sufficient evidence exists for the count upon which appellant was convicted, the judgment of the fact-finder will not be disturbed. *See, e.g., Commonwealth v. Miller,* 441 Pa.Super. 320, 324–26, 657 A.2d 946, 948 (1995); *Commonwealth v. Swann,* 431 Pa.Super. 125, 127–29, 635 A.2d 1103, 1104–05 (1994). The rationale for permitting inconsistency in criminal verdicts is that it is the function of the fact-finder, the learned trial judge in this case, to mete out sufficient punishment. *Miller,* 441 Pa.Super. at 324–26, 657 A.2d at 948.

Because we have found that sufficient evidence existed to convict appellant of recklessly endangering another person, this Court will not disturb the inconsistent verdict that resulted in appellant's acquittal on the lesser included offense of simple assault.

█ Appellant next claims that the trial court erred in refusing to sustain his motion to dismiss pursuant to Pa. R.Crim.P. 1100. Our standard of review in evaluating Rule 1100 issues is whether the trial court abused its discretion in determining that the Commonwealth acted with due diligence in attempting to try the defendant within the applicable time period. *Commonwealth v. Zaslow,* 448 Pa.Super. 289, 294–95, 671 A.2d 707, 710 (1996). Due diligence is a fact-specific concept that is determined on a case-by-case basis. *Id. See also, Commonwealth v. Wentzel,* 434 Pa.Super. 76, 78–81, 641 A.2d 1207, 1208–09, *alloc. denied,* 539 Pa. 667, 652 A.2d 838 (1994).

█ In relevant part, Rule 1100 provides that "[t]rial in a court case in which a written complaint is filed against the defendant, where the defendant is at liberty on bail, shall commence no later than three hundred sixty-five (365) days from the date on which the complaint is filed." Pa.R.Crim.P. 1100(a)(3). In the instant matter, appellant was charged by criminal complaint on September 14, 1994. The Rule 1100 run date was, therefore, September 14, 1995.

Appellant's case was listed for trial in Judge Pezze's court-room in April, June, August and September of 1995. Judge Pezze is normally assigned criminal trials every other month. Each time that the case was scheduled, a delay resulted from the trial of other criminal proceedings that had more urgent run dates. The case was eventually called for trial on October 11, 1995, twenty-seven days past the run date. On that day, a Rule 1100 hearing was conducted and Judge Pezze rejected appellant's motion to dismiss after hearing testimony from both the prosecution and the defense. Additionally, appellant withdrew his request for a jury trial and requested a continuance and a non-jury trial. The request was granted and a non-jury trial commenced on November 7, 1995.

It is evident from the record that the Commonwealth did not at any time prevent appellant's case from commencing or act surreptitiously in any manner. The testimony from Linda Lessick, of the Westmoreland County Court Administrator's Office, taken at the Rule 1100 hearing, established that a crowded criminal docket was the sole reason for the delay in prosecuting appellant. Both this Court and our Supreme Court have held that court congestion may provide a reasonable explanation for the inability to try a defendant within the prescribed time period. *See, e.g., Commonwealth v. Smith,* 524 Pa. 72, 76–77, 569 A.2d 337, 339 (1990) (courts are under no obligation to rearrange their dockets to accommodate a defendant's Rule 1100 rights); *Commonwealth v. Eaddy,* 419 Pa.Super. 48, 58–59, 614 A.2d 1203, 1209 (1992), alloc. denied, 534 Pa. 636, 626 A.2d 1155 (1993). Moreover, appellant's bald assertions that "the prosecution decided the order of selecting cases for trial" and "the Assistant District Attorney, assigned to the Courtroom elected to try other cases before proceeding with the within case" are vacuous and unfounded. (Appellant's brief at 26).

In light of the foregoing, we cannot conclude that the trial court abused its discretion in denying appellant's Rule 1100 motion. Appellant presented a dearth of evidence which would indicate a lack of due diligence on the part of the Commonwealth. Also, appellant's request for an additional

continuance on the date set for trial must negate any allega-tions of subsequent prejudice.

The next issue presented for our review is whether the trial court erred in allowing witnesses to testify about the altercation between appellant and his wife that was occurring when the victim arrived on the scene. Specifically, appellant claims that the altercation constituted a prior bad act and that the testimony was irrelevant and prejudicial.

■ Trial judges are afforded broad latitude and discretion in determining the admissibility of evidence. Their learned determinations will not be disturbed absent a finding of an abuse of discretion. *See, e.g., Commonwealth v. Wharton*, 530 Pa. 127, 144–46, 607 A.2d 710, 719 (1992); *Commonwealth v. Holloman*, 424 Pa.Super. 73, 78–80, 621 A.2d 1046, 1049 (1993).

■ Initially, we note that the altercation at issue cannot readily be described as a "prior" act. The general prohibition against the admission of evidence showing prior bad acts to prove criminal propensity or disposition normally refers to acts that are distinct in time and place from the events which are the focal point of a defendant's trial. *See, e.g., Commonwealth v. Potts*, 388 Pa.Super. 593, 606–07, 566 A.2d 287, 294 (1989), *alloc. granted*, 525 Pa. 656, 582 A.2d 322 (1990); *Commonwealth v. Kubiac*, 379 Pa.Super. 402, 410–12, 550 A.2d 219, 224 (1988), *alloc. denied*, 522 Pa. 611, 563 A.2d 496 (1989). In this case, the altercation between appellant and his wife began several minutes before the victim arrived on the scene and was ongoing at the time that the victim attempted to disarm appellant. Rather than detailing a prior act of appellant, the testimony was relevant to describe the heated and tense situation into which the victim entered when he rushed out of his house.

■ Nonetheless, even if the acts of appellant were to be considered "prior" in time, this Court has long recognized an exception to the general rule disallowing testimony of prior bad acts where the testimony is relevant to detail the overall sequence of events leading up to the crime and the evidence is

not unduly prejudicial. *See, e.g., Wharton,* 530 Pa. at 146–48, 607 A.2d at 720; *Commonwealth v. Stiffler,* 441 Pa.Super. 377, 379–82, 657 A.2d 973, 975–976 (1995); *Holloman,* 424 Pa.Super. at 78–82, 621 A.2d at 1049–50.

Applying this standard to the instant case, we have no difficulty in finding that the challenged evidence was relevant to the charges of REAP, simple assault and terroristic threats. The testimony served to establish that appellant was the aggressor in the situation and was threatening the safety of his wife, the victim and several bystanders. Without this testimony, the ensuing struggle over control of the gun could not be properly understood.

Additionally, appellant has failed to present any evidence of undue prejudice which would result in disallowing the otherwise relevant evidence. Rather, appellant has simply made the unsubstantiated assertion that the evidence was "prejudicial." In so doing, appellant misstates the standard to be applied. It is axiomatic in a criminal trial that all evidence offered by the prosecution will be prejudicial to the defendant. Were mere prejudice the standard, virtually all evidence could reasonably be excluded. For this reason, the test for admissibility is whether the challenged evidence is so *unfairly* prejudicial that its inflammatory nature makes its probative value *de minimus*. *See, e.g., Commonwealth v. Dollman,* 518 Pa. 86, 89–94, 541 A.2d 319, 321–23 (1988); *Commonwealth v. Blount,* 387 Pa.Super. 603, 614–16, 564 A.2d 952, 958 (1989), *alloc. denied,* 525 Pa. 594, 575 A.2d 561 (1990). As our Supreme Court recently stated, a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which the defendant is charged." *Wharton,* 530 Pa. at 147, 607 A.2d at 720.

Appellant has made no attempt to support his claim that the proffered evidence was prejudicial, let alone unduly prejudicial, and this Court would be constrained to so find. In sum,

we cannot say the the trial court abused its discretion in admitting the testimony.

█ Appellant's fourth issue presents the question of whether the trial court erred in disallowing testimony concerning an allegation that the victim and his girlfriend had previously accused a third party of murder. Both the victim and his girlfriend were prosecution witnesses, and the defense sought to impeach their credibility through the introduction of this specific act of alleged misconduct. It is well-settled that the scope and manner of cross examination are within the sound discretion of the trial court. A reversal is only warranted upon a finding of an abuse of discretion. *See, e.g., Commonwealth v. Tyler*, 402 Pa.Super. 429,, 435–37, 587 A.2d 326, 329 (1991); *Commonwealth v. Fried*, 382 Pa.Super. 156, 164–65, 555 A.2d 119, 123, *alloc. denied*, 522 Pa. 623, 564 A.2d 915 (1989).

█ The controlling precedent in this Commonwealth provides that specific acts of alleged misconduct cannot be introduced to impeach a witness. The proper method of cross examination is to impeach a witness by demonstrating that the witness has a bad reputation in the community for truth and veracity. *Tyler*, 402 Pa.Super. at 435–37, 587 A.2d at 329. Furthermore, impeachment evidence that relates to a collateral matter may properly be excluded as irrelevant. *Fried*, 382 Pa.Super. at 164–65, 555 A.2d at 123.

█ This Court has explicitly held that "[t]o refuse to allow a defendant to cross-examine a Commonwealth witness regarding false statements allegedly made in an unrelated case is not an abuse of discretion." *Id.*; *see also, Commonwealth v. Buehl*, 510 Pa. 363, 386–90, 508 A.2d 1167, 1179–80 (1986), *cert. denied*, 488 U.S. 871, 109 S.Ct. 187, 102 L.Ed.2d 156 (1988). The instant matter is legally and factually indistinguishable from the controlling precedent of our Commonwealth, and it cannot be said that Judge Pezze abused her discretion in excluding the testimony.

Appellant next contends that it was error for the trial court to proceed with its criminal prosecution subsequent to the

termination of appellant's employment with the Westmoreland County Children's Bureau. More specifically, appellant avers that he has been subjected to double jeopardy because he had a property right to his tenured civil service position with the County that was terminated due to the events that led to his prosecution. This argument is belied by the law of our Commonwealth and is without merit.

The double jeopardy clause protects individuals from being subjected to successive criminal prosecutions. It does not insulate an individual from the ramifications of ancillary civil or administrative disciplines that may result from the same factual predicate that gave rise to the criminal prosecution. *See, e.g., Commonwealth v. Bryant,* 346 Pa.Super. 475, 476–78, 499 A.2d 1099, 1100 (1985); *Commonwealth v. Brooks,* 330 Pa.Super. 355, 358–59, 479 A.2d 589, 591 (1984).

The rationale for this rule is that civil and administrative proceedings serve a purpose distinct from that of the criminal law. "Professional discipline, whether it be lawyers, judges, stockbrokers or *any other* avocation licensed by the state, is not for the purpose of punishing the violator but is an effort to maintain the standards of the professions and to protect the public from persons unfit to engage in them." *Brooks,* 330 Pa.Super. at 360, 479 A.2d at 592 (emphasis added). This Court finds it entirely possible, and even probable, that the Westmoreland County Children's Bureau chose to terminate appellant in order to maintain the high standards of its office and to protect the public that it serves from persons capable of the type of violence that appellant has displayed. Furthermore, we note that, were appellant's position the law of our state, the result would be to effectively insulate an entire segment of the population from criminal prosecution and punishment provided that they were fired from their job. This is an outrageous proposition that is at odds with both common sense notions of justice and the law of our Commonwealth.

Appellant presents a second double jeopardy argument for our consideration. Namely, whether his acquittal for

the simple assault charge precluded a finding of guilt as to the recklessly endangering another person charge. A person is not subjected to double jeopardy merely because he is charged with more than one offense arising out of a single event. It is successive prosecutions that the double jeopardy clause prohibits, not numerous criminal charges in a single prosecution. Moreover, the issue of the inconsistent verdict in this case has been reviewed by this Court previously and found to be baseless as an avenue of relief for appellant.

Lastly, appellant claims that the trial court committed two errors with respect to its application of the deadly weapon enhancement pursuant to 204 Pa.Code § 303.9. Initially, appellant contends that no evidence was adduced at trial to prove that appellant "possessed" a deadly weapon. In the context of the deadly weapon enhancement, possession is defined as "on the defendant's person or within his immediate physical control." 42 Pa.C.S.A. § 2154(b).

It is appellant's position that "at no time during the alleged reckless endangerment of Mr. Trask did Defendant Peer have control and/or possession of the revolver." (Appellant's brief at 36.) The facts prove otherwise. Indeed, in order to arrive at this suspect conclusion, appellant has had to weave a revisionary rendition of the events out of whole cloth. This is evidenced by appellant's brief, which is replete with references to "alleged victim" Trask and to the "alleged reckless endangerment." This Court is, however, bound to consider the facts as adduced by the fact-finder in the court below. At trial, numerous witnesses testified that appellant brandished the weapon and threatened to kill the victim. Additionally, the victim testified that he felt the barrel of the gun digging into his chest during the struggle with appellant. We are satisfied that this testimony was sufficient to support a finding that appellant possessed a deadly weapon within the meaning of the applicable statute.

Finally, appellant avers that the trial court erred in concluding that imposition of the enhancement was mandatory upon a threshold finding that appellant possessed a deadly

weapon. Rather, appellant contends that the enhancement provision is "merely a recommendation" which the court was free to accept or reject. (Appellant's brief at 37.) A litany of caselaw in this Commonwealth has held to the contrary. This Court has repeatedly and clearly held that a sentencing court "has *no discretion* to refuse to apply the deadly weapon enhancement." *Commonwealth v. Magnum*, 439 Pa.Super. 616, 624, 654 A.2d 1146, 1149–50 (1995) (emphasis added). *See also, Commonwealth v. Jones*, 433 Pa.Super. 266, 275–77, 640 A.2d 914, 919 (1994); *Commonwealth v. Scullin*, 414 Pa.Super. 442, 446–48, 607 A.2d 750, 752, *alloc. denied*, 533 Pa. 633, 621 A.2d 579 (1992); *Commonwealth v. Cornish*, 403 Pa.Super. 492, 494–96, 589 A.2d 718, 720 (1991).

In the instant matter, the weapon enhancement provided for a mandatory period of three-to-six months incarceration. Appellant was sentenced to a period of three-to-twelve months incarceration. Judge Pezze indicated that she had considered the pre-sentence report and the particular circumstances of the case, as well as appellant's statements to the court on the date of sentence. A trial judge may impose a sentence outside of the sentencing guidelines. *See, e.g., Commonwealth v. Jones*, 433 Pa.Super. 266, 269–73, 640 A.2d 914, 916–17 (1994). To do so in this case, however, would have required a sentence below the minimum mitigated range of three months. While Judge Pezze recognized this as an available option, she felt that such a departure would not adequately impress upon appellant the severity of the crime committed. Considering the discretion vested to trial judges in sentencing matters, this Court cannot hold that appellant's sentence was in error.

Judgment of sentence affirmed.