J-S86003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALAN TROY HOUSER | : | |
| | : | |
| Appellant | : | No. 856 WDA 2015 |

Appeal from the Judgment of Sentence May 1, 2015
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s):  CP-65-CR-0003802-2013

BEFORE:  GANTMAN, P.J., MOULTON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED DECEMBER 15, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Westmoreland County following Appellant's conviction by a jury on the charges of aggravated assault and resisting arrest.[1]   On appeal, Appellant contends (1) the evidence was insufficient to sustain his conviction for aggravated assault, and (2) the trial court erred in permitting the Commonwealth to introduce multiple instances of violence, which constituted Appellant's prior bad acts.[2]   We affirm.

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and 5104, respectively.

[2] We have renumbered Appellant's issues.

*Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history have been aptly set forth by the trial court, in part, as follows:

[Appellant] was charged in two separate Informations with causing injuries to his girlfriend, [G.R.]. At 1489 C 2014, he was charged with aggravated assault for injuries occurring on March 27, 2013, and at 3802 C 2013[,] he was charged with stalking, aggravated assault[,] and resisting arrest for an incident occurring on September 6, 2013.

A jury trial occurred before [the trial] court from February 2-5, 2015, at the conclusion of which [Appellant] was found not guilty of aggravated assault at 1489 C 2014. At 3802 C 2013[,] he was found not guilty of stalking [but] guilty of aggravated assault and resisting arrest.

\*\*\*

Facts elicited at trial detailed multiple episodes of confrontations between [Appellant] and [G.R.]. [For instance,] [o]n January 1, 2013, Sergeant Michael Ondo and Patrolman Eric Doutt of the Arnold Police Department responded to a call to 1633 Third Avenue, Arnold, Pennsylvania at 10:15 a.m. (TT 54-55).[3] [G.R.], who resided at that address, complained that [Appellant], her boyfriend, hit her in the face with a bowl, after which he punched her several times in the face. (TT 56). [G.R.] refused medical treatment. (TT 59).

On January 31, 2013, Police Officer John Carilli responded to a call at 1633 Third Avenue. [G.R.] complained that [Appellant] had entered her home through the kitchen window and [had] taken her purse. (TT 71-72).

On February 18, 2013, Officer Doutt was called to 2011 Victoria Street, Arnold, Pennsylvania. He met with [G.R.] whose face was swollen and bleeding. (TT 64-65). [G.R.] explained that she had been babysitting and [Appellant] located her, punching her in the face several times and kicking her on the left side of her head. (TT 66). She stated that when she came to the door, [Appellant] grabbed her by the neck, pulled her

_____

[3] The notes of testimony from the February 2-5, 2015, jury trial have been consolidated and provided to this Court in one large volume. The trial court utilized the citation "TT" to refer to these notes of testimony.

outside[,] and punched her in the face with a closed fist. (TT 150-51).

On March 23, 2013, Police Officers John Carilli and Michael Krahe were called to 1633 Third Avenue because [Appellant] was in the home and [G.R.] wanted him to leave. (TT 74-75). Sergeant Krahe described her demeanor as upset and crying. (TT 103).

Four days later, on March 27, 2013, [Appellant] entered [G.R.'s] Third Street home through a window. He grabbed an aluminum bat and struck her six or seven times. (TT 153). Her neighbor, [D.S.], called police. [G.R.] sustained significant bruising on her torso, arms, and legs. (TT 154-55). Officer Carilli recalled that [G.R.] informed him that she had pulled a rocking chair over her body in order to protect herself. (TT 78). Sergeant Krahe observed bleeding from her left knee and injuries to her forehead and right arm. (TT 105). This incident formed the basis for the aggravated assault charges levied at 1489 C 2014.

The final episode, occurring on September 6, 2013, took place at 624 Bell Street, New Kensington, Pennsylvania at the home of [R.C.]. On that date, [Appellant] and [G.R.] were at her home, along with [E.B.] and [R.C.'s] children. (TT 128). The couple began to fight and [G.R.] fled into the backyard. (TT 131). Police were called at 5:45 a.m. (TT 189). Officer Dion Wagner observed a male standing on top of [G.R.] with his knee on her chest. He observed 2-3 punches and yelled for the actor to stop. (TT 190-91). In response, [Appellant] fled and eventually was found hiding next to a tree. (TT 192-93). Although ordered to get on the ground, [Appellant] refused and had to be tased twice in order to be subdued. (TT 193-94). Officer Christian Baker testified that he tased [Appellant] and yet he and five other officers were unable to handcuff him. After being tased a second time, [Appellant] was subdued. (TT 207-08).

[G.R.] was hospitalized for three weeks with five broken bones in her face. She lost some of her hearing and currently suffers from post traumatic stress disorder (PTSD). She since has had to be hospitalized for extreme anxiety. (TT 159). Dr. Duane Spiker, her psychiatrist, testified to her PTSD and depression, which were caused by the September 6, 2013, incident, and have resulted in her continuing treatment. (TT 216, 219-20).

- 3 -

Trial Court Opinion, filed 11/3/15, at 1-3 (footnote omitted) (footnote added).

Following Appellant's conviction, on May 1, 2015, the trial court sentenced him to ten years to twenty years in prison for aggravated assault, and a consecutive one year to two years in prison for resisting arrest. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

Appellant's first claim is the evidence was insufficient to sustain his conviction for aggravated assault.[4] Specifically, while Appellant does not dispute that he "punch[ed] [G.R.] in the face 2-3 times" on September 6, 2013, he alleges such evidence does not demonstrate an attempt to cause serious bodily injury to G.R. *See* Appellant's Brief at 9. Additionally, he contends that the evidence does not reveal he actually caused G.R. to suffer serious bodily injury.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of

---

[4] Appellant has presented no sufficiency of the evidence claim as it relates to his conviction for resisting arrest.

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Harden***, 103 A.3d 107, 111 (Pa.Super. 2014) (quotation marks and quotations omitted).

The Crimes Code relevantly defines aggravated assault as follows:

**2702. Aggravated assault**

(a) Offense defined.--A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

18 Pa.C.S.A. § 2702(a)(1).

Serious bodily injury is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2602.

In cases where the victim does not suffer actual serious bodily injury:

the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. An attempt under

Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012) (quotations and quotation marks omitted). **See *Commonwealth v. Lewis***, 911 A.2d 558, 564 (Pa.Super. 2006) ("In determining whether the Commonwealth proved the [a]ppellant had the requisite specific intent, the fact-finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom.") (quotation marks and quotation omitted)).

The Crimes Code defines the *mens rea* of "intent" as follows:

A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1).

As the trial court aptly noted in rejecting Appellant's sufficiency of the evidence claim:

In [*Lewis*, *supra*], the victim, weighing 180 pounds, was in a relationship with the defendant who weighed 230 pounds. The couple had numerous fights but none were physical until the instant offense. During this altercation, the defendant punched his girlfriend with a closed fist several times in the face causing her hospitalization for five days.

\*\*\*

[In upholding the defendant's conviction for aggravated assault], [t]he **Lewis** court made particular note of the disparity in [the] size of the defendant and the victim. It noted that the defendant delivered at least three closed fist punches to the victim's body, including her stomach and face. [The defendant in **Lewis**] only desisted from his conduct after he became aware of the approach of the police. This evidence, the court concluded, was sufficient to establish aggravated assault.

In the case at bar, [G.R.] weighed 120 pounds while [Appellant's] weight was 300 pounds. (TT 159). After police were called on September 6, 2013, at 5:45 a.m., Police Officer Dion Wagner observed [Appellant] with his knee on [G.R.'s] chest. He saw him punch her 2-3 times and described these punches as hard. The only reason this attack ended was because the officer called out to [Appellant]. [G.R.] recalled that [Appellant] had thrown her to the ground and stated that he was going to kill her. He began punching her in the face causing her to sustain five broken bones and [ ] partial hearing loss.

Trial Court Opinion, filed 11/3/15, at 6-8.

Based on the aforementioned, even assuming, *arguendo*, G.R. did not suffer actual serious bodily injury, the record sufficiently demonstrates that Appellant attempted to cause serious bodily injury to G.R. on September 6, 2013. **See Lewis**, **supra**. Accordingly, we find no merit to Appellant's sufficiency of the evidence claim.

Appellant's final claim is the trial court erred in permitting the Commonwealth to introduce multiple instances of violence, which constituted Appellant's prior bad acts. Specifically, Appellant contends the evidence of his prior crimes, wrongs, or bad acts was used in order to show his propensity for such behavior and, thus, was prohibited under Pa.R.E.

404(b)(1). He further argues that the probative value of the evidence was outweighed by its prejudicial impact.[5]

It is well settled that "[t]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." **_Commonwealth v. Woodard_**, ___ Pa. ___, 129 A.3d 480, 494 (2015) (quotation marks and quotation omitted). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **_Id._** (citation omitted). "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

"Evidence of a defendant's distinct crimes are not _generally_ admissible against a defendant solely to show his bad character or his propensity for

_____

[5] Appellant has not set forth in his brief the place in the record where he objected to the introduction of the evidence. Our review of the record reveals Appellant filed a _pro se_ pre-trial motion seeking to exclude the evidence on the same grounds asserted on appeal, but the trial court dismissed the _pro se_ motion since Appellant was represented by counsel. There is no indication the trial court forwarded the _pro se_ motion to counsel. In any event, assuming, _arguendo_, Appellant preserved his claim, for the reasons discussed _infra_, we find no relief is due.

committing criminal acts, as proof of the commission of one offense is not *generally* proof of the commission of another." ***Commonwealth v. Billa***, 521 Pa. 168, 555 A.2d 835, 840 (1989) (emphasis in original) (citation omitted). ***See*** Pa.R.E. 404. However, this general proscription against admission of a defendant's distinct bad acts is subject to numerous exceptions if the evidence is relevant for some legitimate evidentiary reason and not merely to prejudice the defendant by showing him to be a person of bad character. ***Billa***, ***supra***. Exceptions that have been recognized as legitimate bases for admitting evidence of a defendant's distinct crimes include, but are not limited to:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design such that proof of one crime naturally tends to prove the others; (5) to establish the identity of the accused where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "res gestae" exception).

***Billa***, 521 Pa. at 177, 555 A.2d at 840 (citations omitted).

In the case *sub judice*, in explaining the reasons it permitted the Commonwealth to offer evidence regarding Appellant's previous acts of abuse against G.R., the trial court provided, in part, the following:

> In this case, the prior violence inflicted on [G.R.] was included to inform the jury of the history of the relationship and its pattern of abuse. These acts established [Appellant's] motive

and intent in continually searching out his girlfriend in order to inflict both emotional distress and serious bodily injury. This history provided the jury with facts showing that [Appellant] acted intentionally, knowingly[,] and with malice when he [assaulted] [G.R. on September 6, 2013].

Trial Court Opinion, filed 11/3/15, at 5-6.[6]

We find no abuse of discretion in this regard. *See Commonwealth v. Jackson*, 900 A.2d 936 (Pa.Super. 2006) (holding the evidence of the appellant's prior domestic abuse of the victim was admissible to show the chain or sequence of events which formed the history of the case, as part of the natural development of the case, and to demonstrate the appellant's motive, malice, intent, and ill-will toward the victim).

Furthermore, we find the trial court did not abuse its discretion as it relates to Appellant's contention the evidence should have been excluded on the basis its probative value was outweighed by its prejudicial effect. "It is axiomatic in a criminal trial that all evidence offered by the prosecution will be prejudicial to the defendant. Were mere prejudice the standard, virtually all evidence could reasonably be excluded." *Commonwealth v. Peer*, 684 A.2d 1077, 1083 (Pa.Super. 1996). For this reason, the test for admissibility is whether the probative value of the challenged evidence is outweighed by

---

[6] We note the trial court indicated Appellant's prior bad acts were also relevant as it related to his stalking charge, for which he was acquitted. Pursuant to the Crimes Code, to prove stalking, the Commonwealth was required to show, *inter alia*, that Appellant "engage[d] in a course of conduct or repeatedly commit[ted] acts toward another person[.]" 18 Pa.C.S.A. § 2709.1.

unfair prejudice. Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id.*

In the case *sub judice*, the evidence of Appellant's prior abuse of G.R. provided the jury with the full history of the parties' relationship, as well as Appellant's motive. Appellant has not demonstrated the evidence improperly diverted the jury's attention or provided an improper basis for convicting Appellant of the September 6, 2013, crimes.

Finding no merit to Appellant's claims, we affirm his judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2016